# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

MALACHI BLANDON,            :
    PLAINTIFF,               :
                               :  CIVIL ACTION NO. 3:10cv463(VLB)
                               :
    v.                        :  OCTOBER 17, 2011
                               :
TEAMSTERS LOCAL UNION NO. 443,   :
    DEFENDANT.           :

## MEMORANDUM OF DECISION GRANTING DEFENDANT'S [DKT. #20] MOTION FOR SUMMARY JUDGMENT

Before the Court is a motion for summary judgment filed by the Defendant, Teamsters Local Union No. 443 ("Local 443"). The Plaintiff, Malachi Blandon ("Blandon"), brought this suit alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*; and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60(a) *et seq.* Blandon alleges that Defendant in connection with his membership in Local 443 discriminated against him on the basis of his race and age and retaliated against him when he filed a complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO"). In particular, Blandon alleges that Defendant discriminated and retaliated against him in three principal ways by: (1) giving preference to white and younger union members ahead of him on seniority lists on several occasions; (2) not providing a grievance form within a timely manner on one occasion; and (3) referring white and younger members to union jobs over older and non-white members. In addition, Blandon asserts causes of action for

1

intentional infliction of emotional distress and negligent supervision.  For the reasons stated hereafter, Defendant's motion for summary judgment is granted.

Facts

The following facts relevant to Defendant's motion for summary judgment are undisputed unless otherwise noted.  Blandon is an African American male who was born on July 6, 1960 and worked as a driver with various employers. [Dkt. #20, Defendant "Def." Local Rule 56(a)(1) Statement at ¶1].  Defendant Local 443 is a labor organization which represents about 2,800 members for collective bargaining purposes in various industries including the construction and general freight industry.  [*Id.* at ¶3].  Blandon has been a member of Local 443 since 1972 and applied for retirement from Local 443 in March 2010.  [Dkt. #25, Plaintiff "Pl." Local Rule 56(a)(2) Statement, Disputed Issues of Material Fact at ¶¶1, 83]. Blandon stopped attending Local 443 meetings in 2006.  [Dkt. #20, Def. Local Rule 56(a)(1) Statement at ¶21 and Dkt. #25, Blandon Dep. at 302].

Blandon has held the following jobs over the last thirty years:

| Employer | Month | Year |
|---|---|---|
| Holmes Transportation | November – December | 1983 |
| St. Johnsbury Trucking | December | 1983 |
| St. Johnsbury Trucking | January | 1984 |
| Holmes Transportation | January - December | 1984 |
| American Freight | November – December | 1984 |
| Holmes Transportation | January - December | 1985 |

| American Freight | February - March | 1985 |
| Holmes Transportation | January - December | 1986-1987 |
| Holmes Transportation | January - August | 1988 |
| Yellow Freight | August - December | 1988 |
| Holmes Transportation | October | 1988 |
| APA Transport | October - November | 1988 |
| Yellow Freight | January - July | 1989 |
| APA Transport | April - August | 1989 |
| O&G | August | 1989 |
| Arute Brothers | September | 1989 |
| Consolidated Freight | October - December | 1989 |
| Consolidated Freight | January - December | 1990 |
| Preston Trucking | March | 1990 |
| SNET/ Watertown Electric | | 1991 |
| CBL Trucking | February - May | 1994 |
| Stop and Shop | January 1996 - April 2006 | 1996-2006 |
| UPS | June - September | 2006 |
| UPS | July - December | 2006 |
| O&G | October - December | 2007 |
| O&G | March - August | 2008 |
| Bayview Trucking LLC | September - November | 2008 |
| Mauro Motors, Inc. | June | 2009 |

**[Dkt. 25, Pl. Ex. 2 and Dkt. #20, Def. Local Rule 56(a)(1) Statement at ¶¶ 89-90, 97].**

**Robert Bayusik ("Bayusik") is the Secretary-Treasurer of Local 443. [Dkt. #20, Def. Local Rule 56(a)(1) Statement at ¶6]. Bayusik was the liaison between the prospective employer and the union and adjudicated grievances and addressed union members' problems. [Dkt. #25, Pl. Local Rule 56(a)(2) Statement, Disputed Issues of Material Fact at ¶¶1, 83]. Bayusik began working**

with Blandon around 1985 when both men were driver/dock workers at Holmes Transportation.  [*Id.* at ¶¶ 5-7 and Dkt. # 25, Blandon Affidavit at ¶2].

Blandon alleges that he experienced discrimination in the workplace.  He alleges that Bayusik did nothing after co-workers made jokes about black people on several occasions.  [Dkt. # 25, Blandon Affidavit at ¶2].  Bayusik also did nothing after Blandon complained that two co-workers poured a white powdery substance all over the inside cab of his truck.  [*Id.* at ¶6].  Blandon also alleges that Bayusik stated that Blandon bought a house in a white neighborhood.  [*Id.* at ¶3].  Bayusik further commented that Blandon's daughter, who was attending Howard University, a historically black university, should be a veterinarian and not a doctor.  [*Id.* at ¶4].  Blandon claims that Bayusik made derogatory comments about the movie "The Color Purple," a film produced by Oprah Winfrey in which some of the black characters were in fact unsavory.  [*Id.* at ¶5].

Blandon also alleges that Bayusik discriminated in the referral of union members to job openings.  Specifically he avers that after he finished his probationary period and was on the full time drivers' seniority list, two individuals named Roger Allen and Mike applied for jobs at Holmes and they were hired. [Dkt. #25, Pl. Local Rule 56(a)(2) Statement, Disputed Issues of Material Fact at ¶¶7-19].  Both men were from Mr. Bayusik's home town.  [*Id.*].  After their probationary period, Blandon alleges they were improperly added to the seniority list ahead of Blandon and that Bayusik ignored Blandon's inequity concerning the matter, forcing him to complain to the Secretary-Treasurer of Local 443, Chick Pisano, about the situation. [*Id.*].  While he was a casual employee at Yellow

Freight and CBL, several white union members were made full time employees ahead of him and Bayusik did nothing to rectify the inequity. [Dkt. # 25, Blandon Affidavit at ¶¶12-14].  He repeatedly contacted Mr. Bayusik to try to get a full time union job but Bayusik did not inform, send or refer of any job openings. [*Id.* at ¶¶15-16].  Blandon alleges that white union members were referred for full time union jobs during this period. [*Id.*].  For example, he avers that when he was going to take his physical for a position at O&G, he saw Mr. Massimino, who had significantly less experience, entering to fill out his application. [*Id.* at ¶17].  In October of 2009, Blandon learned that Manafort Brothers was hiring in Local 443's jurisdiction and alleges that Bayusik told him they weren't hiring and refused to give him a reference. [*Id.* at ¶¶18-19].  He noted that at some presumably relevant time, all of the union members he saw working at Manafort Brothers were Caucasian and all but one of them appeared to be at least 10 years younger than he. [*Id.* at ¶20].  Blandon stated that Bayusik repeatedly refused to refer him for work, forcing him to retire.  [*Id.* at ¶21].  Blandon applied for many positions between 2006 and 2008, but cannot recall exactly where he applied.  [*Id.* at ¶22].  Blandon's complaints regarding discriminatory job referrals are also contained in [Dkt. #25, Ex. 4 at ¶13 and Dkt. #25, Blandon Dep. at 58,75,77-78,164-165, and 108-109].

Blandon also testified at his deposition that Bayusik first refused to give him a grievance form, but acknowledged receiving a form enclosed with a letter from Bayusik dated December 8, 2008, but that he did not receive it until a much later date which he could not recall, by which time he had already lodged a

complaint to the union's Joint Council.  [Dkt. #25, Pl. Local Rule 56(a)(2) Statement at ¶64].  On January 9, 2009, Blandon lodged a complaint with the CHRO.  [Dkt. #20, Def. Local Rule 56(a)(1) Statement at ¶7].

With respect to his discrimination claim, in 2006 Lawrence Bogan, an African American male and William Ziebell were hired prior to Blandon at O&G. Both Bogan and Ziebell were over forty years of age.  It is undisputed that Bogan and Ziebell were not sent by Local 443 to O&G but were nonetheless hired.  [Dkt. #20, Def. Local Rule 56(a)(1) Statement at ¶119].  In August of 2007, Bayusik notified John Burns, a white union member living In Maine and who was on a withdrawal card that he should apply for a position at O&G when Burns called Bayusik inquiring about employment opportunities.  [Dkt. #25, Bayusik Dep. at 116].  Burns applied to O&G and was hired on August 13, 2007.  [Dkt. #25, Pl. Ex. 6].

Del-Va hired the following Local 443's members in 2008 and 2009: Dave Formica was hired September 29, 2008; John Burns was hired November 10, 2008; Danny Dix was hired May 4, 2009; and Richard Vishinsky was hired May 26, 2009.  [Dkt. #25, Pl. Ex. 11].  John Burns stated in a sworn affidavit that he learned of the opportunity at Del-Va when he attended a Local 443 meeting that he called Del-Va and was given an application which he completed.  [Dkt. #20, Def. Ex. 19 at ¶9].  Richard Vishinsky stated in a sworn affidavit that he heard from other union members that Del-Va was hiring and went in person to drop off an application for employment with the company.  [Dkt. #20, Def. Ex. 17 at ¶8].  Danny Dix stated in a sworn affidavit that he worked for two days in February 2009 for Del-Va and that

in May 2009, he received a call from Del-VA who informed him there was a position available which he took.  [Dkt. #20, Def. Ex. 20 at ¶9].  Blandon called Bayusik about job opportunities in August 2008, but was not told about openings at Del-Va.   At the time, Formica and Burns were hired by Del-Va, Blandon was working for Bayview Trucking.

Within the last five years, only four construction employers in Local 443's jurisdiction have hired new employees. [Dkt. #20, Def. Local Rule 56(a)(1) Statement at ¶5].   O&G Industries, Inc. hired three employees in 2006 and nineteen additional employees in 2007 including Blandon.  Beard Concrete hired one specialized mixer employee in 2007 and Tilcon hired one employee in 2008.  Delva Construciton, Inc. hired two drivers in 2009 and then an additional two drivers in 2010.  [*Id.*].

Pursuant to the applicable Collective Bargaining Agreement ("CBA") governing employment in the construction industry, a construction employer is not required to hire those referred by the union.  [Dkt. #20, Def. Local Rule 56(a)(1) Statement at ¶5].  In particular, the CBA provides that "[w]hen the Employer needs additional men, he shall give the Local Union in whose area the work is to be performed equal opportunity with all other sources to provide suitable applicants, but the Employer shall not be required to hire those referred by the Union."  [Dkt. #20, Def. Ex. 4 at 5].  The CBA also provides that "[t]here shall be no discrimination in the referral, hiring, placement, classification, upgrading, lay-off, or termination of employment of any person by reason of race, religion, creed, color, sex, national origin, or age.  The Union agrees to assist and

cooperate with the Employer in complying with the equal opportunity requirements." [*Id.* at 33].

Local 443 alleges that it does not operate a referral hiring hall and does not have the authority or the right to place members in jobs with employers. [Dkt. #20, Def. Local Rule 56(a)(1) Statement at ¶11. Local 443 alleges that individual members obtain employment with signatory contractors by submitting applications for employment directly with employers and that Blandon like other union members secured his own employment by applying directly and not through referral. [*Id.* at ¶¶12, 19].

Blandon disputes Defendant's account and alleges that union members generally must be referred to an employer by the union before that employer will consider the union member's employment application. [Dkt. #25, Pl. Local Rule 56(a)(2) Statement at ¶13. In particular, Blandon alleges that when he applied for a position directly at O&G he was informed by O&G's personnel department that he would need to be referred by Local 443. [Dkt. #25, Pl. Local Rule 56(a)(2) Statement at ¶¶50-54. Blandon testified that he then went to see Bayusik regarding a referral to O&G and Bayusik told him to go back and "tell [O&G] that I sent you." [Dkt. #25, Blandon Dep. at 75, 77-78].

Local 443 alleges that it does not maintain an out of work list for employment opportunities as members solicit their own employment independently. [Dkt. #20, Def. Ex. 13, Bayusik Affidavit at ¶19]. It alleges that it informs members of employment opportunities in response to member's oral

inquiry and has no organized process of disseminating notice of job openings. [Dkt. #20, Def. Local Rule 56(a)(1) Statement at ¶¶11-13].

Blandon alleges that after his layoff from O&G in August 2008 that he called the union several times to ask if there was work, but that Bayusik told him there was none.  [Dkt. #25, Blandon Dep. at 164-165].  Blandon then obtained employment at Bayview Trucking, a non-union position from September through November 2008.  [Dkt. #25, Pl. Local Rule 56(a)(2) Statement, Disputed Issues of Material Fact at ¶72].  During this period, Blandon had a withdrawal card from the union which meant he was not required to pay dues, but could re-enter the union without paying an initiation fee.  [*Id.* at ¶73].

Seniority is a contractual right defined by the terms of the CBA between the union and the employer.  [Dkt. #20, Def. Local Rule 56(a)(1) Statement at ¶15].  An individual working in a job covered by the Local 443 CBA gains and loses seniority rights with an individual employer pursuant to the terms of that contract.  [*Id.* at ¶16].  An employee has no seniority and no right to any job until the employee has been hired by the signatory employer and passes the trial (probationary) period.  [*Id.* at ¶17].  Seniority is therefore determined by the start date of the union member's employment as opposed to the number of years the individual has been a Local 443 member.

Legal Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment

as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of proving that no factual issues exist.  *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010).  "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought."  *Id.*, (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  "If there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party, summary judgment must be denied."  *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315-16 (2d Cir. 2006) (internal quotation marks and citation omitted).  At the summary judgment stage of the proceeding, plaintiffs are required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient."  *Welch-Rubin v. Sandals Corp.*, No.3:03cv481, 2004 WL 2472280, at *1 (D. Conn. Oct. 20, 2004) (internal quotation marks and citations omitted).

<u>Analysis of Time Barred Claims</u>

Title VII and the ADEA require a claimant to file a discrimination charge with the EEOC within 180 days of the alleged unlawful employment action or, if claimant has already filed a charge with state or local equal employment agency, within 300 days of alleged act of discrimination. Age Discrimination in Employment Act of 1967, § 7(d)(2), 29 U.S.C.A. § 626(d)(2); Civil Rights Act of 1964, § 706(e), 42 U.S.C.A. § 2000e-5(e).  In addition, the statute of limitations

under CFEPA requires that a complaint be filed within 180 days of the unlawful employment action.   Conn. Gen. Stat. § 46a-82(f).

There is one exception to these limitations period for continuing violations. The Supreme Court in *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002), clarified "what types of discriminatory acts amount to a pattern or policy that triggers the continuing violation doctrine." *Staff v. Pall Corp.*, 233 F. Supp. 2d 516, 526 (S.D.N.Y. 2002).   The Supreme Court concluded that:

> Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable "unlawful employment practice." [A plaintiff] can only file a charge to cover discrete acts that "occurred" within the appropriate time period . . . Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. The "unlawful employment practice" therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. Such claims are based on the cumulative effect of individual acts.

536 U.S. at 114-15 (internal citations omitted).   "To trigger the continuing violation doctrine when challenging discrimination, the plaintiff 'must allege both the existence of an ongoing policy of discrimination and some non-time-barred acts taken in furtherance of that policy.'"   *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009) (quoting *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999)).

Local 443 argues that the majority of the events that Blandon bases his discrimination suit on are barred by the statute of limitations under Title VII, the ADEA and CFEPA.   Since Blandon filed his CHRO complaint on January 9, 2009, the only events that are actionable are events occurring after March 16, 2008.   The

only event that Blandon alleges that is actionable under the statute of limitations is his allegation that Bayusik referred younger and white union members above Blandon to employment opportunities at Del-Va in 2008 and 2009.   Blandon's complaints regarding seniority refer to events that took place in the 1980s, 1994 and then in 2007, while Blandon's complaint that Bayusik failed to provide him with a grievance form took place in 2007.

Blandon argues that his complaints about seniority, the failure to provide a grievance form and his complaints regarding discriminatory referral practices that fall outside the limitations period should be entitled to proceed under the continuing violations exception.   Blandon argues that his allegations demonstrate a "continued, unremedied practice that allowed white individuals to be referred more frequently and for better work and to be placed higher on seniority lists than black union members."   [Dkt. #25, Pl. Mem. in Opp. to Summary Judgment at 14-15].

Here, Blandon's complaints regarding seniority all occurred prior to the limitations period and should be viewed as discrete acts.   Unlike in a hostile environment claim, here the alleged unlawful practices can be said to occur on a particular day – the day that the seniority list was created and does not necessarily involve repeated conduct.   In addition, Blandon's allegations regarding these incidents of seniority occurred significantly apart from each other which suggest that the conduct does not constitute a continuing violation. While Blandon has not provided the Court with the year in which he was denied seniority at Homes or Yellow Freight in viewing the facts in the light most

favorable to the plaintiff, the Court assumes that the seniority issues occurred in 1988 at Holmes and 1989 at Yellow Freight which are the last years in which Blandon was employed at each respective company.  *See* [Dkt. #25, Pl. Ex. 2, Blandon Work History].  The third incident regarding seniority occurred in 1994 at CBL and then the last incident occurred at O&G in 2007.  [*Id.*].  The substantial lapse of time between each event undermines a conclusion that the events were continuous.  *See Madera v. Metropolitan Life Ins. Co.*, No.99CIV.4005, 2002 WL 1453827, at *4 (S.D.N.Y. July 2, 2002) (finding that plaintiff's allegations were "not continuous in time with one another or with the timely acts that [he] has alleged.") (internal quotation marks and citation omitted);  *Benjamin v. Brookhaven Science Assocs., LLC*, 387 F. Supp. 2d 146, 154 (E.D.N.Y. 2005) (pre-limitations period acts "significantly far apart from each other are 'fatal' to a continuing violation argument"); *Vernon v. Port Authority of New York and New Jersey*, 154 F. Supp. 2d 844, 851 (S.D.N.Y. 2001) ("The discontinuity in time of the three acts of alleged discrimination occurring before September 25, 1994 is fatal to his argument … Here, the first incident occurred in 1989, the second in October of 1992, and the third in May of 1993.").

Plaintiff argues that the substantial lapse of time can be explained by Blandon's ten year employment at Stop & Shop.  However, this argument is unpersuasive since there would still be significant lapses of time even if the Court disregarded Blandon's long and uneventful employment at Stop & Shop. For example, there is still a five-year gap between Blandon's complaint regarding Yellow Freight in 1989 and his complaint regarding CBL in 1994.  *See* [Dkt. #25,

Pl. Ex. 2, Blandon Work History].   Further Blandon was employed by fourteen different union employers over a thirty-year period and has only complained in four instances that he was denied seniority. [*Id.*].   Accordingly, the Court finds that Blandon has failed to present evidence that the alleged denials of seniority constitute a continuous pattern of conduct pursuant to a policy of discrimination. In addition, Blandon has failed to present evidence demonstrating that the alleged failure to refer Blandon to Del-Va which is the sole non-barred act alleged was in furtherance a policy to deny non-white and older union members seniority. Given the substantial lapse of time between each event, the discrete nature of each event, the fact that Blandon worked at ten other union employers without incident counsels in favor of finding that Blandon's claims regarding seniority do not fall under the continuing violations exception.

Likewise the alleged failure to provide a timely grievance form in 2007 should also be considered a discrete act as it does not involve repeated conduct and occurred on a particular day and there is no evidence in the record suggesting that the failure to provide a grievance form constituted a continuous course of conduct pursuant to a policy of discrimination.

Plaintiff argues that if the alleged events prior to 2008 are considered time-barred that would not preclude the Court from considering such prior acts as background evidence in support of Plaintiff's timely claim.  [Dkt. #25, Pl. Mem. in Opp. to Summary Judgment at 15].   The Court agrees and therefore the Court will consider such evidence to the extent it relates to and can support Blandon's timely claim regarding discriminatory referral practices.   *Petrosino v. Bell*

14

*Atlantic*, 385 F.3d 210, 220 (2d Cir. 2004) ("Nevertheless, evidence of earlier promotion denials may constitute relevant 'background evidence in support of a timely claim," and we will consider it as such.'") (citation omitted).  The Court will therefore consider Blandon's allegations regarding referrals that occurred prior to March 16, 2008 as background evidence.

<u>Analysis of Title VII and ADEA Employment Discrimination Claim</u>

Under Title VII, Plaintiff's claims of discriminatory treatment are analyzed using the burden-shifting framework set forth in *McDonnell Douglas Corp., v. Green*, 411 U.S. 792, 802 (1973).  The *McDonnell Douglas* standard requires that Plaintiff establish a *prima facie* case of discrimination by showing that (1) he is part of a protected class; (2) that he was qualified for his position; (3) that he suffered an adverse employment action and (4) that the circumstances surrounding the employment action give rise to an inference of discrimination. *Id.*  The Second Circuit has noted that the burden to establish a *prima facie* case is "minimal" or "de minimis."   *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005).

If Plaintiff can establish a *prima facie* case, the burden shifts to the Defendant to proffer a legitimate, nondiscriminatory reason for the adverse employment action.  *McDonnell*, 411 U.S. at 802.  As this stage, Defendants need only proffer, not prove, the existence of a nondiscriminatory reason for their employment decision.  *See Texas Dep't of Cmty Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981).  "This burden is one of production, not persuasion; it can involve

no credibility assessment." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000) (internal quotations omitted).

If Defendant meets its burden of production, the burden shifts back to Plaintiff to show that the legitimate, nondiscriminatory reason offered by the Defendant is mere pretext for illegal employment discrimination. *McDonnell*, 411 U.S. at 804. "Although the intermediate evidentiary burdens shift back and forth under this framework, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves*, 530 U.S. at 143.

Plaintiff's claim for age discrimination under the ADEA is analyzed under the same standards as Title VII claims. *Nieves v. Angelo, Gordon & Co.*, 341 Fed.Appx. 676, (2d Cir. 2009) ("The same standards and burdens apply to claims under both Title VII and the ADEA"). However, the Supreme Court has recently noted that it "had not definitively decided whether the evidentiary framework of *McDonnell Douglas* … is appropriate in the ADEA context," *Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2349 n. 2 (2009).   Nonetheless, the Second Circuit has concluded that post-*Gross* the *McDonnell Douglas* framework is still applicable to ADEA claims however the latter part of the *McDonnell Douglas* formulation has been altered by "eliminating the mixed-motive analysis that circuit courts had brought into the ADEA from Title VII cases." *Gorzynski v. Jetblue Airways Corp.*, 596 F.3d 92, 106 (2d Cir. 2010) (finding post-*Gross* that "we remain bound by, and indeed see no reason to jettison, the burden-shifting framework for ADEA cases that has been consistently employed in our Circuit");

*Hrisinko v. N.Y.C. Dep't of Educ.*, 369 F.App'x. 232, 234 (2d Cir. 2010) (finding that employees must now prove that "age was the 'but-for' cause behind the employer's adverse decision, and not merely one of the motivating factors.").

The nature of discrimination cases within the union context is different than those encountered in the traditional employment context in connection with the adverse employment action analysis under *McDonnell*.  Therefore under the union context, a plaintiff does not have to show a materially adverse change in the terms and conditions of employment but rather that plaintiff has been deprived of the ability to "expeditiously ascertain and enforce rights under a collective bargaining agreement."  *Bey v. I.B.E.W. Local Union No. 3*, No.05CIV.7910, 2008 WL 821862, at *19 n.17 (S.D.N.Y. March 26, 2008) ("In the union context, the indices are obviously quite different from those encountered in the employment context. Thus, courts apparently do not find it necessary to limit the definition of an adverse employment action to the types of actions articulated in the standard.").  Accordingly, courts have articulated the prima facie standard in connection with allegations of discriminatory referrals by unions to include that a plaintiff must show (1) he belongs to a protected class; (2) he applied and was qualified for referrals and that the union was referring persons; (3) despite plaintiff's qualified he was not referred for jobs; and (4) after plaintiff's rejection, defendant was still referring applicants from person's of plaintiff's qualifications. *Virgo v. Local Union 580*, 629 F. Supp. 1204, 1206 (S.D.N.Y. 1986); *see also Alexander v. Local 496, Laborers' Intern. Union of North America*, 177 F.3d 394, 403 (6th Cir. 1999).

Here, it is undisputed that Blandon is African American and over forty years of age and therefore a member of a protected class under Title VII and the ADEA.  In addition, there has been no evidence introduced to suggest that Blandon was not qualified for any union job or referral.  In addition, Blandon has submitted admissible evidence that he on numerous occasions contacted the union regarding job opportunities and referrals and that he was repeatedly told by Bayusik that there were no jobs available. *See* [Dkt. # 25, Blandon Affidavit at ¶15-16, 19-20].  First, Blandon stated in a sworn affidavit that he repeatedly contacted Bayusik seeking employment in 1988 after he left Holmes Transportation and that Bayusik did not inform him of or refer him to any jobs. [Dkt. #25, Blandon Affidavit at ¶15-16].  Second, Blandon submitted an employment application with O&G in 2006 and contacted Bayusik who later informed him that O&G was not hiring.  Blandon then again contacted Bayusik regarding O&G while he was employed at UPS in 2006 and was again told they were not hiring.  [Dkt. #25, Pl. Ex. 4, Def. CHRO Answer to Complaint at ¶14]. Third, Blandon contacted Bayusik in August 2008 seeking employment opportunities after he was laid off from O&G but was told that none were available.  [Dkt. #25, Blandon Dep. at 164-165].  Lastly, in October 2009, Blandon contacted Bayusik regarding any openings at Del-Va and was told that they were not hiring.  [Dkt. #25, Blandon Aff. at ¶19].  Therefore Blandon has established that Bayusik was aware on numerous occasions that he was actively searching for employment.

There is evidence in the record that after Blandon had informed Bayusik that he was actively searching for employment, putting Blandon on notice of that fact, Bayusik did not reach out or contact Blandon regarding employment opportunities.  There is also evidence that Bayusik informed younger or white Local 443 members of employment opportunities.  It is undisputed that when John Burns, a white younger male, contacted Bayusik in August of 2007 Bayusik informed Burns that O&G was hiring Local 443 members and directed him to apply. In addition, David Formica and John Burns, both white younger males obtained employment with Del-Va in September and November 2008 a few months after Blandon had been informed by Bayusik in August 2008 that there were no jobs available.  [Dkt. #25, Pl. Ex. 11].

However, there is no evidence that Blandon contacted Bayusik in August of 2007 inquiring about employment opportunities as Burns did when he was referred to O&G.  There is also no evidence that any jobs were available in August of 2008 when Blandon did actually inquire about employment opportunities. While Blandon claims Bayusik ignored his repeated requests to inform him if any employment opportunities became available, there is no evidence that Bayusik contacted any union member directly to inform him or her of employment opportunities, indeed the evidence is to the contrary.  It is undisputed that Burns contacted Bayusik directly in August of 2007.   Nor is there any evidence that Bayusik assisted Formica or Burns in obtaining employment at Del-Va. Defendant has submitted into evidence an affidavit from John Burns in which Burns stated that he learned about the opportunity at Del-Va when he attended a

union meeting.  [Dkt. #20, Def. Ex. 19, Burns Affidavit at ¶9].  Therefore there is evidence that although Local 443 had knowledge of these employment opportunities at Del-Va, it did not initiate contact with Blandon specifically to inform him of these opportunities.   Instead, the information was disseminated at a union meeting to the union members who were present.  Blandon does not claim to have been present at that meeting.

Moreover, by the time, Burns and Formica were hired by Del-Va, Blandon had found a job from September to November of 2008.  Blandon was employed by Bayview Trucking, LLC and moreover, Blandon was not a member of the union in August of 2008.  [Dkt. #25, Pl. Local Rule 56(a)(2) Statement, Disputed Issues of Material Fact at ¶72].  Defendant argues that Blandon has not offered evidence of regular contact with Local 443 and that Blandon went for long periods of time without contacting Bayusik or attending union meetings.  [Dkt. #28, Def. Reply Mem. at 18-19].  Viewing the facts in the light most favorable to the non-moving party, Blandon has not presented sufficient evidence for a reasonable jury to conclude that Bayusik had a duty to initiate contact with and inform him that opportunities at O&G and Del-VA became available particularly in the absence of any evidence that Bayusik initiated contact with anyone to inform them of employment opportunities. The facts presented are insufficient to establish an inference of discrimination.

Pursuant to the Collective Bargaining Agreement, the Union agreed that that "[t]here shall be no discrimination in the referral, hiring, placement, classification, upgrading, lay-off, or termination of employment of any person by reason of race, religion, creed, color, sex, national origin, or age.  The Union agrees to assist and cooperate with the Employer in complying with the equal opportunity requirements."  [Dkt. #20, Def. Ex. 4 at 33].  Therefore, Local 443 was under an obligation to ensure that information regarding employment opportunities was distributed in a non-discriminatory, equal and fair manner in order to assist its employers in complying with equal opportunity requirements. A reasonable jury could arguably conclude that Local 443 had an obligation to contact Blandon when employment opportunities later arose in order to fulfill its obligations to ensure its compliance with equal opportunity requirements. However, Blandon has failed to establish that Bayusik initiated contact with any other union member to inform them of job opportunities, nor has Blandon presented any evidence that Bayusik's failure to contact Blandon to inform him of employment opportunities  deprived him or any specific job opportunities.

While Blandon has submitted evidence regarding Bayusik's alleged discriminatory animus to establish an inference of discrimination, alleging that Bayusik acquiesced in jokes made about black people and made comments about where Blandon lived and the kind of doctor Blandon's daughter should be and an acclaimed African American film, these alleged comments are innocuous. Moreover, they have no demonstrated nexus to the conduct of which Blandon complains and therefore cannot support an inference of discrimination.  *Howe v.*

*Town of Hempstead*, No.05CIV0656, 2006 WL 3095819, at *7 (E.D.N.Y. Oct. 30, 2006) ("Racist comments may constitute evidence of an intent to discriminate, but only if a sufficient nexus exists between the comments and the adverse employment action.").

Local 443's main defense to Blandon's allegations is its assertion that it did not operate a referral hiring hall, did not maintain an out of work list, and that its members solicited employment directly from prospective employers.  However, Blandon disputes this account and alleges that Local 443 would routinely inform and refer its members to employment opportunities. The Court notes that Blandon has submitted admissible evidence including his own testimony regarding his personal experiences with Local 443 that it would inform its members regarding employment opportunities and that companies would require that Local 443 formally or informally refer those members for employment.  The Court notes that Plaintiff has also submitted additional evidence regarding Local 443's referral practices that is inadmissible hearsay.  However, some forms of inadmissible evidence can be considered at the summary judgment stage if such evidence can be easily rendered admissible at the trial stage.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (nonmoving party need not "produce evidence in a form that would be admissible at trial in order avoid summary judgment"); *Bernhardt v. Interbank of New York*, No,92CV4550, 2009 WL 255992, at *5 (E.D.N.Y. Feb. 3, 2009) (noting that courts have interpreted *Celotex* to find that "evidence that would be inadmissible at trial may raise a material issue of fact on summary judgment, but only when that evidence can be easily rendered

admissible at the trial stage."). Here, Blandon would be easily able to produce admissible evidence at trial that various employers required Local 443 to refer its member before accepting their employment applications. Accordingly, the Court finds there is a genuine issue of material fact in dispute regarding Local 443's referral practices. For purposes of the summary judgment motion the Court must then credit Plaintiff's account that Local 443 did refer its members for employment opportunities. However even assuming this, Blandon's plight is doomed because he has failed to establish that Bayusik failed to initiate contact with him to inform him of employment opportunities and instead initiated contact with white younger union members; nor has he established that Bayusik knew that there were employment opportunities and falsely told him there were not and failed to refer him to jobs which were available at times when Blandon made inquiries.

Defendant also argues that Blandon cannot state a claim for discrimination in regards to the Del-Va project because Blandon never submitted an application for employment there. Defendant further argues that since an employer is not required to hire any Local 443 member that has been referred that Blandon cannot state a claim for discrimination. However, these arguments are entirely misplaced. The heart of Blandon's discrimination claim is that Local 443 was obligated to inform him and then where required refer him to employment opportunities when they arose. Blandon did not submit an application to Del-Va because Bayusik had repeatedly informed him that no employer was hiring. If Bayusik had instead reached out and informed Bayusik when Del-Va was hiring,

Blandon would have likely submitted an application for employment.  The fact that an employer could have rejected Blandon even if he was referred by Local 443 does not mean that Local 443 was not under an obligation to inform and refer its members to employment opportunities in a non-discriminatory fashion.  Here, the unlawful employment discrimination claim entirely relates to the distribution of employment opportunities by Local 443 and not whether union members actually obtained employment when they were referred and applied to such employers.   Defendant also argues that Blandon cannot prove unlawful discrimination because there was very little construction work available in the last five years.   However, the amount of construction positions that became available is not determinative of whether unlawful discrimination occurred.

While the Court concludes that Blandon has failed to present sufficient evidence to establish an inference of discrimination, the Court notes that Local 44'3 defense that it does not operate a referral hall is not a legitimate non-discriminatory reason for its alleged misconduct.  The fact that Local 443 claims that it has no system, process, or policy regarding informing and referring its members to employment opportunities could not defeat an inference of discrimination if Blandon had been able to establish one.  If Local 443 admittedly has no process to ensure a fair and equal distribution of employment opportunities then a reasonable jury could conclude that in the absence of such a process unlawful discrimination occurred where there is an inference of discrimination.  Moreover if the Court accepted such a defense as a legitimate non-discriminatory reason that would have the effect of potentially insulating

Local 443 from a discrimination suit altogether.  Under Title VII and the ADEA, Local 443 has an obligation to ensure that it affords its members equal opportunity to employment with its signatory employers.  Without a formal system or process ensuring such equal opportunity, Local 443 is courting suspicions of and enabling opportunities for discrimination and favoritism to take hold and succeed.

<u>Analysis of Title VII and ADEA Retaliation Claim</u>

Blandon also alleges that Local 443 retaliated against him when he filed his CHRO complaint on January 9, 2009 by continuing to refuse to inform or refer him to job opportunities after his complaint was filed.  To establish a *prima facie* claim for retaliation under both Title VII and the ADEA, a plaintiff must show that (1) he engaged in a protected activity; (2) his employer is aware of the activity; (3) the employer took some adverse action against him; and (4) a causal connection exists between the protected activity and the adverse action that a retaliatory motive played a part in the adverse employment action.  *Cifra v. G.E. Co.*, 252 F.3d 205, 216 (2d Cir. 2001).  Retaliation claims are also analyzed using the burden-shifting framework set forth in *McDonnell Douglas*.

It is undisputed that Blandon engaged in a protected activity when he filed his CHRO complaint and that Local 443 was aware of that activity.  In particular, Blandon alleges that Local 443 retaliated against him when they continued to refer white and younger members to employment opportunities and did not also inform him of these opportunities when they arose.  For example, Danny Dix and

Richard Vishinsky obtained employment with Del-Va in May 2009 which was just four months after Blandon filed his CHRO complaint.

Here, Blandon has failed to demonstrate that a causal connection exists between the protected activity and the adverse action to establish that a retaliatory motive played a part in the adverse employment action.   First, there is no evidence that Blandon contacted Bayusik regarding employment opportunities after he filed his CHRO complaint in January of 2009.  The last time that Blandon had contacted Bayusik to let him know he was seeking employment was in October of 2009 prior to Blandon engaging in a protected activity.  Lastly, there is no evidence that Bayusik initiated contact with Dix or Vishinsky to inform them of the employment opportunity at Del-Va.   Dix stated in an affidavit that he was contacted directly by Del-Va about the opportunity and Vishinsky stated in an affidavit that he heard about the opportunity from other union members.  *See* [Dkt. #20, Ex. 20, Dix Affidavit at ¶9 and Dkt. #20, Ex. 17, Vishinsky Affidavit at ¶8]. Considering there is no evidence that Bayusik was aware that Blandon was seeking employment and the fact that Bayusik did not initiate contact with Dix or Vishinsky, a reasonable jury could not conclude that Bayusik retaliated against Blandon.

### Analysis of CFEPA Claims

It is well established that CFEPA claims proceed under the same analysis as ADEA and Title VII claims.  *Craine v. Trinity Coll.*, 259 Conn. 625, 637 n.6 (2002) (holding that the Connecticut Supreme Court looks to federal precedent when

interpreting and enforcing the CFEPA); *McInnis v. Town of Weston*, 375 F. Supp. 2d 70, 85 (D. Conn. 2005).  The Court notes that Connecticut courts have not yet addressed whether the recent Supreme Court's decision in *Gross* also impacts the CFEPA analysis.  Until such time as the Connecticut courts adopt the *Gross* standard in connection with age discrimination claims, it will follow existing Connecticut court pronouncements on the appropriate standard to employ in applying Connecticut law.   Here Blandon has not presented sufficient evidence demonstrating age discrimination under both the less onerous CFEPA standard as well as the more onerous *Gross* standard.  Since the foregoing ADEA and Title VII analysis applies to Plaintiff's CFEPA claims, Defendant's motion for summary judgment is granted as to Plaintiff's CFEPA claims.

<u>Analysis of Intentional Infliction of Emotional Distress Claim</u>

Blandon alleges that Local 443's conduct was sufficiently extreme and outrageous to constitute the tort of intentional infliction of emotional distress. Under Connecticut law, in order to succeed on an intentional infliction of emotional distress claim, Plaintiff must establish "(1) that the actor intended to inflict emotional distress or that he knew or should have known that the emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the distress suffered by the plaintiff was severe." *Appleton v. Bd. Of Ed. Of the Town of Stonington*, 254 Conn. 205, 210 (2000) (citation omitted).  In addition, "[w]hether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question

for the court to determine.   Only where reasonable minds disagree does it become an issue for the jury." *Id.* (citation omitted).

"In the employment context, it is the employer's conduct, not the motive behind the conduct, that must be extreme or outrageous.  An employer's adverse yet routine employment action does not constitute extreme and outrageous conduct even if based on race or other improper motives."   *Robinson v. City of New Haven*, 578 F. Supp. 2d 385, 390 (D. Conn. 2008) (internal quotation marks and citations omitted).   "Routine employment action, even if undertaken with improper motivations, does not constitute extreme or outrageous behavior when the employer does not conduct that action in an egregious and oppressive manner."  *Conge v. Sikorsky Aircraft Corp.*, No.3:075-cv-1650, 2007 WL 4365676, at *9 (D. Conn. Dec. 11, 2007).

The Court does not find Bayusik's conduct toward Blandon to constitute extreme or outrageous behavior.  The fact that Blandon was told by Bayusik that there were no current employment opportunities when Blandon inquired and then did not reach out to Blandon when employment opportunities later arose is simply not extreme or outrageous behavior.  In addition, the fact that Local 443 did not have a formal process or system for ensuring equal access to employment opportunities is not the type of extreme or outrageous behavior that is intended to be covered by the tort of intentional infliction of emotional distress. Moreover, there is simply no evidence from which a reasonable jury could conclude that Bayusik intended to inflict emotional distress on Blandon or should have known his conduct would likely result in emotional distress.  Not every

instance of alleged employment discrimination will give rise to a claim for intentional infliction of emotional distress. *See, e.g., Nguyen v. People's United Bank*, [], 2010 WL 4918706, at *2 (D. Conn. Nov. 23, 2010) ("Drawing all reasonable inferences in her favor, the Court may infer that her employers discriminated against her, but not in a way that was extreme or outrageous"); *Williams v. Deloitte Servs., LP*, No. 3:09-cv-17, 2009 WL 3571365, at *2-3 (D. Conn. Oct. 26, 2009) (dismissing intentional infliction of emotional distress claim against employer who denied African-American employee overtime and hired white employees over African-American employee among other discriminatory conduct); *Lorenzi v. Connecticut Judicial Branch*, 620 F.Supp. 2d 348, 353 (D. Conn. 2009) ("Close supervision, the demeaning and unprofessional speech alleged ... unfair job appraisals, inferior office space, denial of pay raises and promotions, orders to limit interactions with certain other employees, insults about one's lunch, discrimination on the basis of race and/or national origin ... do not meet the standard for finding that conduct was extreme and outrageous."). Accordingly, the Court grants Defendant's motion for summary judgment as to Plaintiff's intentional infliction of emotional distress claim.

### Analysis of Negligent Supervison

Blandon alleges that Local 443 negligently supervised Bayusik and thereby breached its duty to exercise due care and that its negligence lead to the harm Blandon suffered when Bayusik failed to inform and refer him to employment opportunities. Under Connecticut law, "[n]egligent hiring, negligent retention and negligent supervision are three similar causes of action, each of which imposes

liability on an employer for the foreseeable tortious acts of an employee…a plaintiff must allege facts that support the element of foreseeability" *Friday-Houser v. DVA Healthcare of Norwich, LLC*, No.CV095013896S, 2010 WL 4226752, at *5 (Conn. Super. Ct. Sept. 21, 2010) (internal quotation marks and citation omitted).  Courts "interpreted this foreseeability requirement as one in which the employer knew or should have known of the employee's propensity to engage in the alleged harmful conduct." *Id.* (internal quotation marks and citation omitted). "It is well settled that defendants cannot be held liable for their alleged negligent hiring, training, supervision or retention of an employee accused of wrongful conduct unless they had notice of said employee's propensity for the type of behavior causing the plaintiff's harm." *Cherniak v. Connecticut Post Newspaper Co.*, No.CV040412889, 2005 WL 3624208, at *3 (Conn. Super. Ct. Dec. 12, 2005) (internal quotation marks and citation omitted).  "The test that is often applied in determining whether there exists a duty to use care is the foreseeability of harm. Would the ordinarily prudent man in the position of the defendant, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result? This does not mean foreseeability of any harm whatsoever or foreseeability that the particular injury which resulted would occur. It is, in short, the foreseeability or anticipation that harm of the general nature of that suffered would be likely to result, which gives rise to a duty to use due care, breach of which might constitute negligence." *Seguro v. Cummiskey*, 82 Conn. App. 186, 194 (2004) (internal quotation marks and citation omitted).

While, a reasonable jury could arguably conclude that both the opportunity for someone so inclined to discriminate illegally and the appearance of illegal discriminatory referrals was a foreseeable consequence of not having a formal process or policy of ensuring access to employment opportunities, there is insufficient evidence that Bayusik's actions were driven by age or race bias.  Nor is there evidence that Local 443 had notice of Bayusik's alleged propensity for engaging in a practice of discriminatory referrals.   Accordingly, there is no genuine issue of material fact in dispute as to Local 443's negligent supervision and a reasonable jury could not conclude that Local 443 negligently supervised Bayusik.

<u>Conclusion</u>

Based upon the above reasoning, the Defendant's [Dkt. #20] motion for summary judgment is GRANTED.


IT IS SO ORDERED.


_____/s/_____

Hon. Vanessa L. Bryant

United States District Judge


Dated at Hartford, Connecticut: October 17, 2011